IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ARCH DEVELOPMENT CORP., and DANA-FARBER CANCER INSTITUTE, INC., | ) ) ) ) |
| Plaintiffs, | ) ) ) No. 1:15-cv-06597 ARW |
| v. | ) ) |
| GENENTECH, INC., and OSI PHARMACEUTICALS LLC, | ) ) ) |
| Defendants. | ) |

**PLAINTIFFS' OPENING CLAIM CONSTRUCTION BRIEF**

**TABLE OF CONTENTS**

I. Introduction ................................................................................................................ 4

II. The Tenets of Claim Construction ............................................................................ 4

III. A Person of Ordinary Skill in the Art ....................................................................... 5

IV. The '512 Patent .......................................................................................................... 6

V. The Proper Construction of the Disputed Terms ...................................................... 7

    A. *Patient* ............................................................................................................... 7

    B. *A Therapeutically Effective Amount* ................................................................ 8

VI. The Agreed Constructions ........................................................................................ 9

VII. Conclusion ............................................................................................................... 10

## TABLE OF AUTHORITIES

**CASES**                     **PAGE(S)**

*Cascades Streaming Techs., LLC v. Big Ten Networks, LLC,*
   2016 U.S. Dist. LEXIS 59391 at *19 (N.D. Ill. May 4, 2016) .............................................. 4, 9

*In re Body Sci. LLC Patent Litigation*,
   2016 U.S. Dist. LEXIS 22446 at *22-23 (D. Del. Feb. 24, 2016) ............................................ 7

*OSI Pharmaceuticals, LLC et al. v. Arch Development Corp., et al.*,
   IPR2016-01034, Paper No. 1 [ECF Docket No. 44-1] ....................................................... 5, 6, 8

*Phillips v. AWH Corp.*,
   415 F.3d 1303 (Fed. Cir. 2005) ................................................................................................ 9

**I.      Introduction**

Plaintiffs hereby submit their opening claim construction brief to address the two terms of U.S. Patent No. 7,838,512 ("the '512 patent") identified by the parties as requiring construction by the Court.

**II.     The Tenets of Claim Construction**

A court generally should give a claim's words their "ordinary and customary meaning, as they would be understood by one of ordinary skill in the art in question at the time of the invention." *Cascades Streaming Techs., LLC v. Big Ten Networks, LLC,* 2016 U.S. Dist. LEXIS 59391 at *19 (N.D. Ill. May 4, 2016) (citation omitted). "In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Id.* (citations omitted). If a term's meaning is not readily apparent to a generalist, however, the court must consult "those sources available to the public that show what a person of skill in the art would have understood disputed claim language to mean." *Id.* (citations omitted).

Publicly available sources fall into two categories – "intrinsic evidence" and "extrinsic evidence." *Id.* (citations omitted). Intrinsic evidence consists of the patent itself and the official records dealing with the patent's creation, including "the words of the claims themselves, the remainder of the specification, [and] the prosecution history." *Id.* (citations omitted). Intrinsic evidence is the most important evidence of a term's ordinary meaning. *Id.* at *20 (citations omitted). "Claim language must be viewed in light of the specification, which is the single best guide to the meaning of a disputed term." *Id.* (citation omitted). However, courts also must take care to avoid "importing limitations from the specification into the claim." *Id.* (citations omitted).

4

Extrinsic evidence is evidence from outside the intrinsic record that "shed[s] useful light on the relevant art," including "expert and inventor testimony, dictionaries, and learned treatises." *Id.* at *21 (citation omitted). Extrinsic evidence "is less significant than the intrinsic record in determining the legally operative meaning of claim language." *Id.* (citations omitted).

The rule that a claim term bears its ordinary meaning has two exceptions: "lexicography and disavowal." *Id.* at *22 (citation omitted). "Lexicography" refers to the principle that a patentee is entitled to redefine terms—to "act as its own lexicographer." *Id.* (citation omitted). If the patent's specification "clearly set[s] forth a definition of [a] disputed claim term other than its plain and ordinary meaning" and "clearly express[es] an intent to redefine the term," then that definition prevails. *Id.* at *22-23 (citation omitted).

The second exception, "disavowal," refers to the principle that the patent applicant can disclaim in statements during prosecution that the patent applies to certain technology, even if the claims, given their ordinary meanings, would cover that technology. *Id.* at *23 (citation omitted). Disavowal is also known as "disclaimer." *Id.* The applicant can make a disavowal in the patent's specification or in other communications with the Patent Office. *Id.* at *23-24 (citations omitted). Courts should not read a statement as a disavowal unless it evinces a "clear and unmistakable" intent to disavow claim scope. *Id.* at *24 (citations omitted).

### III.  A Person of Ordinary Skill in the Art

As noted above, claims are to be read as would one skilled in the art at the time of invention. The person of ordinary skill in 1994 (the priority application date for the '512 patent) would have held an M.D. or Ph.D. in molecular biology, biochemistry, pharmacology, or a related field and would have had several years of experience working in cancer research. *OSI Pharmaceuticals,*

5

*LLC et al. v. Arch Development Corp., et al.*, IPR2016-01034, Paper No. 1 [ECF Docket No. 44-1] at 17 (P.T.A.B. May 13, 2016).

**IV.     The '512 Patent**

Tyrosine kinases are enzymes that catalyze the phosphorylation of a substrate by attaching a phosphoryl group to a tyrosine amino acid residue on the substrate. *OSI Pharmaceuticals, LLC et al. v. Arch Development Corp., et al.*, IPR2016-01034, Paper No. 1 [ECF Docket No. 44-1] at 7 (P.T.A.B. May 13, 2016). Tyrosine kinases are known to be involved in cell signaling pathways that control cell growth, differentiation (i.e., development of a precursor cell into a particular cell type via a series of intracellular events), and cell death. *Id.*

DNA damaging agents were known to affect cancer cells by causing "activation of DNA repair, cell cycle arrest, and lethality." *Id.* at 8, *quoting* '512 Patent, col. 1 (JA0024), lines 32-35. The cell cycle involves a progression through four phases: G1 (growth phase); S (copying of DNA); G2 (rapid growth in preparation for mitosis/cell division); M (mitosis/cell division. *Id.* The cell cycle can arrest in G1, S, and G2 to allow cells with damaged DNA to repair their DNA. *Id.* In part, these "checkpoints" are regulated by tyrosine kinases. *Id.*

The prior art describes the investigation of cell differentiation as a manner of treating tumors. Differentiation is the process by which precursor cells undergo a series of changes—including intracellular events—to become a more specialized cell. *Id.* at 29. In contrast, apoptosis, one of the forms of cell death described in the '512 patent, is defined as "a series of intracellular events that lead to target cell death." *Id.* at 36, *quoting* '512 Patent, col. 5 (JA0026), lines 35-38. Obviously, creating a more specialized cell is not the same as killing the cell.

The '512 patent claims methods of administering a chemotherapeutic DNA damaging agent in combination with a low molecular weight tyrosine kinase inhibitor. *Id.* at 12. This

6

claimed combination leads to "synergistic cancer cell killing effects over and above the actions of the individual DNA damaging component." '512 Patent, col. 4 (JA0025), lines 28-31.

## V. The Proper Construction of the Disputed Terms

The following table sets forth the terms in dispute and the plaintiffs' proposed constructions therefor:

| Limitation | Claim(s) | Plaintiff's Construction |
|---|---|---|
| "patient." | 1-3 & 5-6 | "One who receives medical attention, care, or treatment." |
| "a therapeutically effective amount." | 1-3 & 5-6 | "An amount that, when administered is effective to kill cells in an animal." |

### A. *Patient*

The plaintiff proposes that the term "patient" be defined to mean "one who receives medical attention, care, or treatment," *i.e.*, the dictionary definition of that term. *See In re Body Sci. LLC Patent Litigation*, 2016 U.S. Dist. LEXIS 22446 at *22-23 (D. Del. Feb. 24, 2016). This definition is consistent with the specification of the '512 patent. First, the identified need in the '512 patent is to "enhance the effects of radiation," which "would greatly benefit cancer patients." '512 Patent, col. 2 (JA0024), lines 65-67. Further, the claimed invention "provides advantageous methods for treating cancer that, generally, comprise administering to an animal or human patient with cancer a therapeutically effective combination of a DNA-damaging agent and a tyrosine kinase inhibitor." *Id.*, col. 5 (JA0026), lines 50-54. Finally, Example V's Treatment Protocol No. 1 calls for treating "[p]atients exhibiting neoplastic disease" with "genistein, at a concentration of between 1 and 100 µM, or herbimycin A at a concentration of between about 1 and 100 µM, for 6 hours prior to exposure to a DNA damaging agent." *Id.*, col. 20 (JA0033), lines 45-49.

The defendants propose that this term be defined as simply "human or animal." The plaintiffs do not dispute that the individual receiving medical attention, care, or treatment can be

7

an animal, but in a veterinary sense. Said another way, the administration of the claimed combination therapy to a laboratory animal for medical testing purposes would not be commonly understood to be administration to a "patient." One would not speak of administering the claimed combination to "benefit" a laboratory animal, or treating such an animal with a "therapeutically effective combination," as the specification of the '512 patent teaches with regard to administration to a patient.

Thus, the plaintiffs' proposed construction is correct, and the Court should reject the defendants' proposed construction, which would include as a "patient" any laboratory animal used solely for medical experimentation.

### B. *A Therapeutically Effective Amount*

Plaintiffs propose this limitation be defined as "an amount that, when administered is effective to kill cells in an animal." This definition is the inventors' lexicography from the '512 patent. '512 Patent, col. 4 (JA0025), lines 16-18 ("a 'therapeutically effective amount' is an amount of DNA damaging agent and tyrosine kinase inhibitor that, when administered to an animal in combination, is effective to kill cells within the animal"). The definition is also consistent with the stated aim of the claimed invention, *i.e.,* the "synergistic cancer cell killing effects." '512 Patent, col. 4, lines 28-31. One specific embodiment of the claimed invention is a kit "for use in killing cells." *Id.* at col. 6 (JA0026), lines16-17. Not a single embodiment disclosed in the '512 patent results in cell differentiation, as opposed to cell death.

The defendants contend that this term should be construed as "an amount that would be sufficient to have a desired therapeutic effect." This, according to the defendants, is the plain and ordinary meaning of this term. *OSI Pharmaceuticals, LLC et al. v. Arch Development Corp., et al.*, IPR2016-01034, Paper No. 1 [ECF Docket No. 44-1] at 20 (P.T.A.B. May 13, 2016). While

8

the defendants' characterization of their proposed construction may be correct, and while the plain and ordinary meaning of a claim term usually controls, as noted above, an inventor's own lexicography trumps such plain and ordinary meaning. *Cascades Streaming,* 2016 U.S. Dist. LEXIS 59391 at *22. The use of a special definition set forth in a patent is not discretionary – it is the invention that governs. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1315 (Fed. Cir. 2005) ("the specification may reveal a special definition given to a claim term by the patentee that differs from the meaning it would otherwise possess. In such cases, the inventor's lexicography governs").

Given that the inventors, in this case, did opt to set forth expressly a "special definition" of this limitation in the specification, that definition should be adopted in favor of the plain and ordinary meaning, as urged by the defendants.

## VI. The Agreed Constructions

The parties have agreed to the proper constructions of several claim limitations. Because those agreed constructions, in many instances, inform as to the proper constructions of the disputed terms, plaintiffs set forth those constructions before discussing the disputed terms. The following table sets forth the subject limitations and the agreed constructions therefore:

| Limitation | Claim(s) | Agreed Constructions |
|---|---|---|
| Claim preambles | 1-3 & 5-6 | Not limiting. |
| "intracellular"/"intracellularly." | 1-3 & 5-6 | "within a cell or cells." |
| "apoptosis." | 5 | "a series of intracellular events that lead to target cell death." |
| "low molecular weight | 1-3 & 5-6 | "having a molecular weight less than 900 g/mol." |
| "chemotherapeutic DNA damaging agent." | 1-3 & 5-6 | "any chemical compound that induces DNA damage when applied to a cell." |
| "downstream effector molecules." | 2, 3 & 5 | "molecules downstream in a signaling pathway." |
| "thereby improving chemotherapeutic intervention." | 1-3 & 6 | Not limiting. |

**VII.     Conclusion**

For the foregoing reasons, plaintiffs respectfully request that their constructions of the two claim limitations in dispute be adopted.

Date: August 2, 2016                                  Respectfully submitted,

                                                                         */s/ George C. Summerfield*
                                                                         George C. Summerfield
                                                                         Kyle L. Harvey
                                                                         STADHEIM & GREAR, LTD.
                                                                         400 North Michigan Avenue
                                                                         Suite 2200
                                                                         Chicago, Illinois 60611
                                                                         T: (312) 755-4400
                                                                         F: (312) 755-4408
                                                                         summerfield@stadheimgrear.com
                                                                         harvey@stadheimgrear.com

                                                                         *ATTORNEYS FOR PLAINTIFFS*
                                                                         *ARCH DEVELOPMENT CORP.*
                                                                         *and DANA-FARBER CANCER*
                                                                         *INSTITUTE, INC.*